IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| BLUE RIDGE BANKSHARES, INC. <br><br> and <br><br> BLUE RIDGE BANK, NATIONAL ASSOCIATION <br><br> Plaintiffs, <br><br> v. <br><br> TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA <br><br> Defendant. <br><br> Serve: Corporation Service Company, <br> Registered Agent for Travelers <br> Casualty and Surety Company of America <br> 100 Shockoe Slip, 2nd Floor <br> Richmond, VA, 23219 – 4100 | Case No. 3:23cv00029 |

## COMPLAINT

Blue Ridge Bankshares, Inc. and Blue Ridge Bank, National Association, set forth the following as their Complaint against Travelers Casualty and Surety Company of America:

### Nature of the Case

1. This is a dispute over insurance coverage for a class action complaint against Blue Ridge Bankshares, Inc., as successor-in-interest of Virginia Community Bankshares, Inc., and Blue Ridge Bank, National Association, as successor-in-interest to Virginia Community Bank, alleging claims under the Employee Retirement Income Security Act of 1974 ("ERISA"). That action is pending in this Court as *Janice Moore v. Blue Ridge Bankshares, et al.,* (Case 3:19-cv-00045-NKM-JCH) ("Underlying Lawsuit").

1

## Parties

2. Blue Ridge Bankshares, Inc. is a Virginia corporation that maintains a principal place of business at 17 West Main Street, Luray, Virginia, 22835. Via a merger in 2019, Blue Ridge Bankshares, Inc., became the successor in interest of Virginia Community Bankshares, Inc. Prior to the merger, Virginia Community Bankshares, Inc. was a Virginia corporation that maintained a principal place of business at 114 Industrial Drive, Louisa, Virginia, 23903.

3. Blue Ridge Bank, National Association, is a national banking association that maintains a principal place of business at 17 West Main Street, Luray, Virginia, 22835. It is a wholly-owned subsidiary of Blue Ridge Bankshares, Inc. As a result of the aforementioned 2019 merger, Blue Ridge Bank, National Association, is the successor in interest of Virginia Community Bank.

4. For ease of reference, Blue Ridge Bankshares, Inc. and Blue Ridge Bank, National Association, are referred to collectively throughout this Complaint as "Blue Ridge Bank." Similarly, Virginia Community Bankshares, Inc. and Virginia Community Bank are referred to collectively as "VCB."

5. Travelers Casualty and Surety Insurance Company of America ("Travelers") is a Connecticut corporation, and it maintains a principal place of business at One Tower Square, Hartford, Connecticut, 06183. Travelers is authorized to transact business in Virginia, and it sells insurance policies (including the one at issue in this case) to customers throughout the Commonwealth.

## Jurisdiction and Venue

6. The amount in controversy exceeds $75,000.00, and there is complete diversity of citizenship among the parties. Therefore, jurisdiction is proper in this Court under 28 U.S.C. §1332.

7. Blue Ridge Bank regularly conducts business within the Charlottesville Division of the Western District of Virginia.

8. The Underlying Lawsuit to which this insurance coverage action relates is pending in the Charlottesville Division of the Western District of Virginia, and the events giving rise to the Underlying Lawsuit took place primarily at VCB's headquarters in Louisa, Virginia, which falls within the Charlottesville Division of the Western District of Virginia.

9. The insurance policy at issue in this case was issued to VCB at its headquarters in Louisa, Virginia, which is located in the Charlottesville Division of the Western District of Virginia.

10. For each of these reasons, the Charlottesville Division of the Western District of Virginia is a proper venue for the adjudication of this dispute over insurance coverage.

## Factual Allegations

### A.  The Applicable Insurance Policy

11. Prior to its 2019 merger with Blue Ridge Bank, VCB maintained an insurance policy (Policy No. 10642059) with Travelers that provided various liability coverages to VCB. The policy renewed each year on January 1st.

12. In contemplation of a merger with another bank in 2018, VCB procured a renewal policy with Travelers that was largely intended to protect the merged entities against claims arising out of VCB's pre-merger operations. That policy renewal was effective for the period

beginning September 30, 2018, and ending September 30, 2019. A copy of the 2018-2019 renewal policy (the "Policy"), which is incorporated herein by reference, is attached as Exhibit A.[1]

13. The Policy, marketed as a "SelectOne for Community Banks" liability policy, provides various liability coverages specific to risks facing community banks. Those various coverages, and the limits afforded by each coverage part, are identified in the Declarations page of the Policy. (Ex. A, pp. 16-25.)

14. Three of the coverages provided by the Policy are pertinent to this action. They are: (i) the "Fiduciary Liability Coverage;" (ii) the "Professional Liability Coverage;" and (iii) the "Financial Institution Bond."

15. In addition to the primary coverage forms for each of the above-referenced coverages, various endorsements, terms and conditions in the Policy may be relevant to the present coverage dispute.

### B. Travelers Provides Coverage for the Underlying Lawsuit under The Policy's "Fiduciary Liability Coverage".

16. In 2017, VCB received one or more inquiries from participants in the VCB Employee Stock Ownership Plan ("ESOP") and from the United States Department of Labor regarding the management of the ESOP.

17. VCB reported these inquiries to Travelers' claims department by email dated October 12, 2017, from Amy Shick, an employee of VCB.

18. Travelers treated VCB's email notification regarding the ESOP as a report of an "incident" under the policy in effect for the policy period beginning January 1, 2017 and ending January 1, 2018.

---

[1] Exhibit A is a true and accurate copy of the Policy, but Plaintiff has added individual page numbers (Blue Ridge 00001 – Blue Ridge 00291) for ease of reference throughout this litigation.

4

19. Travelers closed that "incident" report in August of 2018, when no formal demand or claim had materialized.

20. Subsequently, on February 19, 2019, VCB received a demand letter from Mark Krudys, Esq., counsel for Janice Moore ("Krudys Demand Letter"). This letter made specific demands and threatened legal action for alleged violations of duties owed to participants in the ESOP under ERISA. A copy of the Krudys Demand Letter is attached as Exhibit B.

21. VCB notified Travelers of the Krudys Demand Letter and provided a copy of that correspondence to Travelers.

22. By letter dated April 1, 2019, Travelers acknowledged that the Krudys Demand Letter constituted a Claim under the Fiduciary Liability coverage part of the Policy issued for the 2018-2019 policy period. A copy of Travelers' April 1, 2019, letter is attached as Exhibit C.

23. On or about August 12, 2019, Janice Moore filed a class action Complaint against Blue Ridge Bank in its capacity as successor in interest to VCB. Like the Krudys Demand Letter, the Complaint alleged that VCB and certain former officers or directors of VCB violated their duties under ERISA as fiduciaries of the ESOP.

24. Ms. Moore later amended her Complaint. The Amended Complaint added additional former officers and directors of VCB as defendants and expanded on certain factual allegations underlying the ERISA claims alleged in the original Complaint. A true and accurate copy of the Amended Complaint is attached hereto as Exhibit D.

25. Via letter dated August 23, 2019, Travelers asserted that the Underlying Lawsuit and the Krudys Demand Letter were "related claims" for purposes of coverage under the Policy, and Travelers reiterated that the Underlying Lawsuit was a covered Claim under the Fiduciary

Liability Coverage of the Policy. A true and accurate copy of the August 23, 2019, letter is attached as Exhibit E.

26. Since April 1, 2019, therefore, Travelers has consistently recognized the Krudys Demand Letter and the Underlying Lawsuit as a Claim under the Fiduciary Liability Coverage of the Policy.

27. Travelers has paid to defend Blue Ridge Bank and the various defendants in the Underlying Lawsuit according to the terms and conditions applicable to the Fiduciary Liability coverage part of the Policy.

28. In addition to the Fiduciary Liability Coverage, Blue Ridge Bank has demanded in writing that Travelers provide coverage for the Underlying Lawsuit under the Financial Institution Bond and the Professional Liability Coverage of the Policy.

29. In return correspondence, Travelers has denied coverage for the Underlying Lawsuit under the Financial Institution Bond and the Professional Liability Coverage.

30. Based on the parties' correspondence and Travelers' denial of coverage, there is an actual case or controversy that is ripe for the Court's adjudication regarding Blue Ridge Bank's right to coverage for the Claims asserted in the Underlying Lawsuit under the Financial Institution Bond and the Professional Liability Coverage of the Policy.

C. **Travelers' Refusal to Provide Coverage under the Financial Institution Bond in the Policy.**

31. The Financial Institution Bond in the Policy (marketed as a "Financial Institution Bond with Extended Coverages") promises to indemnify VCB for losses caused by a number of specific risks.

32. Among other things, the Financial Institution Bond covers loss caused by employee dishonesty in the management of an ERISA plan.

33. The Financial Institution Bond was intended to satisfy certain bonding requirements set out in federal regulations regarding ERISA. *See,* 29 C.F.R. 2580.412-1, *et seq.*

34. As amended by endorsement, the Financial Institution Bond applies to: "Direct loss of, or direct loss from damage to, Property that belongs to an Employee Benefit Plan, directly caused by acts of Fraud or Dishonesty committed by a Fiduciary, whether identified or not, acting alone or in collusion with other persons." (Ex. A, p. 281.)

35. The Policy defines "Fraud or Dishonesty" to have the same meaning set forth in the applicable federal regulations regarding ERISA. *Id.*

36. Notably, the Financial Institution Bond includes coverage for "Court Costs and Attorney's Fees – Legal Proceedings – Election to Defend." That provision provides the Insured proportionate coverage for defense costs incurred due to lawsuits arising out of allegations that, if proven, would constitute a covered loss under the Bond. (Ex. A, pp. 247-48.)

37. In pertinent part, the "Court Costs and Attorney's Fees" coverage provides:

> The Company will indemnify the Insured for court costs and reasonable attorney's fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability, or alleged liability, on account of any loss, claim, or damage that, if established against the Insured, would constitute a collectible loss under this bond in excess of any Single Loss Deductible Amount.

*Id.*

38. Thus, the Financial Institution Bond covers not just first-party losses, but amounts spent to defend against third-party claims. This includes third-party claims alleging Fraud or Dishonesty by a Fiduciary of an ERISA plan.

39. The Underlying Lawsuit alleges Fraud or Dishonesty by Fiduciaries in the management of an ERISA plan. (*See, e.g., Ex. D,* ¶ 5.)

40. Thus, the Underlying Lawsuit alleges claims that fall within the "Court Costs and Attorney's Fees" coverage of the Financial Institution Bond of the Policy.

41. While Blue Ridge Bank denies the allegations in the Underlying Lawsuit that fiduciaries of the ESOP acted dishonestly, Blue Ridge Bank is entitled to indemnity from Travelers under the "Court Costs and Attorney's Fees" coverage. Pursuant to that coverage, Travelers is obligated to reimburse Blue Ridge Bank for at least a proportionate share of the defense costs Blue Ridge Bank has incurred, and will incur, as a result of the Underlying Lawsuit.

42. However, Travelers has denied Blue Ridge Bank's demand for coverage under the Financial Institution Bond on several grounds.

43. First, Travelers has taken the position that Blue Ridge Bank must submit a proof of loss affirming that Blue Ridge Bank sustained a loss of Property caused by a Fiduciary's Fraud or Dishonesty before coverage under the Bond is implicated.

44. However, the Financial Institution Bond does not require an insured to attest that fraud or dishonesty has occurred in order to seek reimbursement of its defense costs pursuant to the "Court Costs and Attorney's Fees" coverage. Travelers' denial of coverage on this basis runs afoul of the provisions in the Financial Institution Bond providing coverage for defense costs arising out of an "*alleged* liability…that, *if established* against the Insured, *would* constitute a collectible loss under th[e] bond…." (Ex. A, p. 247) (emphasis added).

45. Second, Travelers maintains that the Financial Institution Bond for the 2017-2018 policy period – and not under the Policy for 2018-2019 period – governs the present dispute. Specifically, Travelers avers that the loss alleged in the Underlying Lawsuit was first

"discovered" by VCB in 2017, and thus, the Financial Institution Bond that was in effect in 2017 applies.

46. Travelers' position in this regard ignores relevant language in the Financial Institution Bond, which provides that "Discovery also occurs when [the Insured] receives notice of an actual or potential claim in which it is alleged that the Insured is liable to a third party under circumstances that, if true, would constitute a loss under this bond." (Ex. A, p. 261.)

47. Moreover, with respect to the Fiduciary Liability Coverage, Travelers has never asserted that the Krudys Demand Letter and/or the Underlying Lawsuit gave rise to a Claim under the policy that was in place for the 2017-2018 policy period, nor has Travelers ever asserted that the Krudys Demand Letter and/or Underlying Lawsuit related back to the "incident" that VCB reported to Travelers in the fall of 2017. Instead, Travelers has recognized since April 2019 that the Krudys Demand Letter and Underlying Lawsuit constitute a Claim first asserted in 2019, when the Policy was in effect.

48. The Policy includes a "Cross-Coverage Notice Endorsement" which establishes that notice of any claim or loss under one portion of the Policy "shall be deemed to have been provided under the Policy in its entirety." (Ex. A, p. 27.)

49. However, Travelers avers that any loss to which the Financial Institution Bond might apply was discovered in 2017, prior to the inception of the Policy.

50. Thus, despite the Cross-Coverage Notice Endorsement, Travelers takes the incongruous position that the Underlying Lawsuit constitutes a claim under the Fiduciary Liability Coverage for the 2018-2019 policy period but constitutes a loss under the Financial Institution Bond in the 2017-2018 policy period.

51. Having acknowledged that the Underlying Lawsuit falls under the 2018-209 Policy for purposes of the liability coverages, Travelers is estopped from arguing that the Underlying Lawsuit constitutes a loss under a prior year's Financial Institution Bond.

52. Travelers has taken this position so that it can exercise an exclusion (Exclusion K) in the 2017-2018 iteration of the Financial Institution Bond for losses arising out of trading of securities. However, Exclusion K was amended by an endorsement to the 2018-2019 Policy to exempt ERISA claims from the operation of that exclusion. (Ex. A, p. 281.)

53. Travelers has also asserted the potential application of other exclusions in the Financial Institution Bond regarding specific types of damages, but even if applicable, those exclusions would not obviate coverage entirely under the Financial Institution Bond for the claims asserted in the Underlying Lawsuit.

54. Therefore, Travelers has wrongfully denied coverage for the Underlying Lawsuit under the Financial Institution Bond.

D. **Travelers' Refusal to Provide Coverage under the Professional Liability Coverage of the Policy.**

55. Blue Ridge Bank has also demanded that Travelers provide coverage for the Underlying Lawsuit under the Professional Liability Coverage of the Policy.

56. The Professional Liability Coverage includes three distinct insuring agreements. Insuring Agreement A provides coverage for "Lender Liability;" Insuring Agreement B provides coverage for "Professional Services Liability;" and Insuring Agreement C provides coverage for "Trust Services Liability." (Ex. A, pg. 109.)

57. The Lender Liability coverage applies to Claims arising out of a "Lending Act," which the Policy defines, in pertinent part, as any alleged:

> error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by the Insured Organization, or any Insured Person in his or her capacity as such, in connection with or relating to: (1) an agreement or refusal to grant or extend any such loan, lease or extension of credit...."

(Ex. A, pg. 111.)

58. Notably, an exclusion in the Professional Liability Coverage bars coverage for Claims arising out of ERISA, but that exclusion only applies to Insuring Agreements B and C. (Ex. A, p. 116, ¶ 9.)

59. The ERISA exclusion in the Professional Liability Coverage does not apply to Claims under Insuring Agreement A for Lender Liability.

60. Therefore, the Lender Liability coverage applies to Claims alleging improper loans to an ERISA plan.

61. The Underlying Lawsuit alleges that VCB made loans to the ESOP that were improper under ERISA. (*See, e.g.,* Ex. D, ¶¶ 80-95, 110-119, 199.)

62. Thus, the Underlying Lawsuit alleges Claims that fall within the Lender Liability Insuring Agreement of the Professional Liability Coverage of the Policy.

63. Travelers has acknowledged that the Underlying Lawsuit constitutes a Claim under the Lender Liability coverage, but Travelers has nevertheless refused to provide coverage to Blue Ridge Bank under that coverage part.

64. In denying such coverage, Travelers has relied upon a "securities exclusion" added by endorsement to the Professional Liability Coverage that applies to any "Claim based upon or arising out of securities issued by the Insured Organization." (Ex. A, pg. 124.)

65. The "securities exclusion" in the Professional Liability Coverage does not preclude coverage because the Underlying Lawsuit includes allegations of Lending Acts by VCB that are not "based upon or arising out of securities issued by [VCB]."

66. At the very least, the "securities exclusion" is ambiguous in its definition and in its application to this case. For example, it is not clear whether the exclusion extends to claims of mismanagement of an Employee Benefit Plan under ERISA, as opposed to traditional securities claims such as insider-trading.

67. Exclusions in insurance policies are strictly construed in favor of coverage, and Travelers cannot rely upon an ambiguous exclusion to deny coverage for the Underlying Lawsuit under the Lender Liability Coverage.

68. Therefore, Travelers has wrongfully denied coverage for the Underlying Lawsuit under the Professional Liability Coverage.

## Count I
## Breach of Contract

69. Blue Ridge Bank incorporates the foregoing paragraphs of this Complaint by reference.

70. The Policy constitutes a written contract of insurance between Travelers and Blue Ridge Bank, as successor in interest to VCB.

71. In exchange for the payment of premiums, Travelers promised to indemnify VCB, and/or its successor in interest, Blue Ridge Bank, for certain types of claims and/or losses up to certain dollar limits.

72. The Underlying Lawsuit asserts claims against Blue Ridge Bank that fall within the insuring agreements of the Fiduciary Liability Coverage, Financial Institution Bond and Professional Liability Coverage of the Policy.

73. While Travelers has provided coverage to Blue Ridge Bank for the Underlying Lawsuit under the Fiduciary Liability Coverage of the Policy, Travelers has refused to provide coverage under the Financial Institution Bond and/or Professional Liability Coverage of the Policy.

74. Travelers' refusal to provide coverage to Blue Ridge Bank under the Financial Institution Bond and Professional Liability Coverage for the claims asserted in the Underlying Lawsuit constitutes a breach of Travelers' obligations under the insurance contract.

75. Blue Ridge Bank has been damaged by Travelers' breach of the insurance contract to the extent it has not received the coverage for which it bargained and paid a premium.

## Count II
## Declaratory Relief

76. Blue Ridge Bank incorporates the foregoing paragraphs of this Complaint by reference.

77. Blue Ridge Bank has demanded coverage under the Financial Institution Bond and Professional Liability Coverage of the Policy for the claims asserted in the Underlying Litigation.

78. Travelers has denied Blue Ridge Bank's demand for such coverage.

79. Accordingly, there is an actual and justiciable controversy concerning Travelers' obligations to provide coverage to Blue Ridge Bank under the Policy.

80. Blue Ridge Bank requests a judicial determination and declaration of the parties' respective rights, obligations, duties and liabilities under the Policy.

81. The Underlying Lawsuit is ongoing, and declaratory relief is appropriate and necessary at this time so that the parties may ascertain their respective rights, obligations, duties, and liabilities under the Policy.

WHEREFORE, Blue Ridge Bankshares, Inc. and Blue Ridge Bank, National Association pray that judgment be entered in their favor against Travelers Casualty and Surety Company of America as follows:

1) Compensatory damages in an amount to be proven at trial, up to the full limit of coverage ($2,500,000.00) for the Financial Institution Bond of the Policy, to reimburse Blue Ridge Bank for defense costs and legal fees incurred to defend the Underlying Lawsuit, plus pre-judgment interest;

2) Compensatory damages in an amount to be proven at trial, up to the full limit of coverage ($2,000,000.00) for the Professional Liability Coverage of the Policy, to reimburse Blue Ridge Bank for defense costs and legal fees incurred to defend the Underlying Lawsuit, plus pre-judgment interest;

3) Declaratory relief by which the Court orders that Travelers is obligated:

   (i) to reimburse Blue Ridge Bank for its defense costs and legal fees incurred to defend the Underlying Lawsuit up to the limit of coverage available under the Financial Institution Bond of the Policy;

   (ii) to reimburse Blue Ridge Bank for its defense costs and legal fees incurred to defend the Underlying Lawsuit up to the limit of coverage available under the Professional Liability Coverage of the Policy;

   (iii) to indemnify Blue Ridge Bank for any judgment incurred in the Underlying Lawsuit up to the available limit of coverage under the Financial Institution Bond of the Policy; and

   (iv) to indemnify Blue Ridge Bank for any judgment incurred in the Underlying Lawsuit up to the available limit of coverage under the Professional Liability Coverage of the Policy;

   (v) in the alternative, if the Court determines that the Financial Institution Bond for the 2017-2018 policy applies to the claims in the Underlying Lawsuit, that Travelers is obligated to reimburse Blue Ridge Bank for its defense costs and legal fees incurred to defend the Underlying Lawsuit, and to indemnify Blue Ridge Bank for any judgment incurred in the Underlying Lawsuit up to the limit of coverage available under the Financial Institution Bond of the policy in effect during the 2017-2018 policy period.

4) All costs and attorneys' fees that it incurs in this matter; and

5) Such other and further relief that the jury and Court deem appropriate.

        BLUE RIDGE BANKSHARES, INC., and
        BLUE RIDGE BANK, NATIONAL ASSOCIATION

        By: _____
               Counsel

Harold E. Johnson (VSB 65591)
WILLIAMS MULLEN
200 South 10th Street, P. O. Box 1320
Richmond, Virginia 23218-1320
804.783.6447
804.783.6507 (fax)
hjohnson@williamsmullen.com
*Counsel for Plaintiffs*
102586889.1