

April 1, 2019

**E-MAIL ONLY**

Mr. A. Preston Moore, Jr.
Virginia Community Bankshares, Inc.
114 Industrial Drive, PO Box 888
Louisa, VA 23093

Re:  Insured:     **Virginia Community Bancshares, Inc.**
     Insurer:     **Travelers Casualty and Surety Company of America**
     Policy:      **Policy No. 106420159, eff. 9/30/18-9/30/19**
     Matter:      **Janice Moore**
     Claim No.:   **T1903241**

Dear Mr. Moore:

This letter follows our several conversations and receipt of the full February 19, 2019 letter (the "Demand Letter") from attorney Mark J. Krudys, on behalf of Janice Moore, to you and other executives at Virginia Community Bank. That full letter was sent in your e-mail on February 28, 2019.

This matter was forwarded to my attention for a response under the policy (the "Policy") issued to Virginia Community Bankshares, Inc. by Travelers Casualty and Surety Company of America ("Travelers").

In this letter I will describe, and in some instances paraphrase, the coverage afforded under the Policy. My references to the Policy do not modify it in any way. The Policy remains controlling regarding any determination or analysis of coverage. Because the Policy is an indemnity policy, Travelers cannot definitively determine coverage until the claim is resolved. Any coverage analysis in this letter is based on the allegations made and information known to date and is subject to change as the claim develops and/or further information is obtained.

### The Claim

Please note that by referring to the allegations in the Demand Letter, I do not intend to lend them any credence. Nevertheless, the allegations set forth in the Demand Letter provide the context to determine what coverage may be available for this matter.

Janice Moore is alleged to be a retired employee of Virginia Community Bank (the "Bank"), a wholly owned subsidiary of Virginia Community Bankshares, Inc. (the "Holding Company"), and was a participant in the Virginia Community Bankshares, Inc. Employee Stock Ownership Plan ("ESOP").

A. Preston Moore, Jr.
April 1, 2019
Page 2

The Demand Letter alleges wrongdoing which took place in 2007 and 2008. Specifically, it is alleged that an inflated price of $55.00 per share for Holding Company stock – based on a valuation undertaken as of December 31, 2006 (the December 31, 2006 Valuation") by Howe, Barnes, Hoefer & Barnett (the "Valuation Advisor") – was used in the sale of Holding Company stock by ESOP fiduciaries to the ESOP. The same allegation appears to be made with respect to subsequent sales of Holding Company shares under an allegedly inflated December 31, 2007 valuation of $39.15 per share.  The Demand Letter alleges the following:

1. The ESOP trustees (who are not identified) and other fiduciaries (also not identified) failed to provide complete, accurate and current information to the Valuation Advisor and perhaps other valuation advisors.
2. The ESOP trustees failed to undertake a prudent investigation to assess the valuations to determine if they were justified based on information available to them.
3. There was collusion between the ESOP trustees and unnamed ESOP fiduciaries in the establishment of the valuations.
4. Certain sales by unnamed ESOP fiduciaries to the ESOP trustees constituted breach of ERISA duties of prudence as well as prohibited transactions under ERISA.
5. Loans from the Bank to the ESOP which were necessary to satisfy the Holding Company's repurchase obligations (of 44,800 shares) may not have been exempt from ERISA prohibited transactions.
6. Breach of the ERISA duty of loyalty by ESOP fiduciaries by approving loan terms, based on the valuations, which resulted in substantial interest expense to the ESOP and other diminution of ESOP assets.
7. Possible distributions made to employees who did not have a *bona fide* separation from service, which adversely affects the tax-qualified status of the ESOP.

The Demand Letter indicates that Ms. Moore will bring a class action on behalf of Plan participants to rescind prohibited transactions and to require the ESOP fiduciaries to disgorge all profits which they have received. The action will be based upon ERISA and any available state causes of action. The Demand Letter requested a response by March 1, 2019, but I understand that an extension of time was obtained.

### The Policy

Travelers issued SelectOne for Community Banks Policy No. 106420159 ("Policy") to Virginia Community Bankshares, Inc., effective September 30, 2018 to September 30, 2019. The Policy is a claims-made policy and includes Liability Coverage Terms and

A. Preston Moore, Jr.
April 1, 2019
Page 3

Conditions (LIA-3001) as well as potentially separate insuring agreements which an Insured may select.

The only Insuring Agreement which is part of this Policy, and applicable to this Claim, is the Fiduciary Liability Insuring Agreement ("FLIA" - Form FRI-3001). Under the FLIA, there is a $2,000,000 limit of liability and a retention of $75,000 applicable to this matter. The FLIA provides:

> The Company will pay on behalf of the Insured, Loss for any Claim first made during the Policy Period, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, for a Wrongful Act.

The pertinent definitions and other provisions in the FLIA, and how those may affect coverage under the Policy are as follows:

> **Claim** includes:
>
> 1. a written demand for monetary damages or non-monetary relief;
> 2. a civil proceeding commenced by service of a complaint or similar pleading;
> …
> against an Insured for a Wrongful Act.
>
> **Wrongful Act** means**:**
> 1. any actual or alleged breach of fiduciary duty by or on behalf of the Insured with respect to any Employee Benefit Plan, including:
> > a. any actual or alleged breach of duties, obligations and responsibilities imposed by ERISA, COBRA, HIPAA, or by any similar or related federal, state, local, or foreign law or regulation, in the discharge of the Insured's duties with respect to an Employee Benefit Plan; or
> > b. any other matter claimed against an Insured solely because of the Insured's status as a fiduciary of an Employee Benefit Plan; or
> 2. any actual or alleged negligent act, error or omission by or on behalf of the Insured in the Administration of Employee Benefits.
>
> **Administration** means**:**
> 1. giving counsel, advice, or notice to employees of the Insured Organization, participants, or beneficiaries with respect to Employee Benefits;
> 2. interpreting Employee Benefits;
> 3. handling records in connection with Employee Benefits; or
> 4. effecting enrollment, termination or cancellation of employees of the Insured Organization, participants, or beneficiaries under an Employee Benefits program.

A. Preston Moore, Jr.
April 1, 2019
Page 4

**Employee Benefit Plan** means**:**
1. any Welfare Plan which was, is now, or becomes sponsored solely by the Insured Organization exclusively for the benefit of employees of the Insured Organization;
2. any Pension Plan, including an Employee Stock Ownership Plan, which was, or is, sponsored solely by the Insured Organization exclusively for the benefit of employees of the Insured Organization and which existed on or before the Inception Date set forth in ITEM 2 of the Declarations;
3. any group or group-type insurance program, including a Health Savings Account (HSA) program, that meets the safe harbor conditions set forth in 29 C.F.R. 2510.3-1(j)(1), or any benefit plan that is not subject to Title I of ERISA, including any fringe benefit or excess benefit plan, that was, is now, or becomes sponsored solely by the Insured Organization exclusively for the benefit of employees of the Insured Organization; or
4. any Pension Plan for which coverage is provided pursuant to section V. CONDITIONS B. ACQUISITION OR FORMATION OF AN EMPLOYEE BENEFIT PLAN of this Liability Coverage.

**Insured** means the Insured Persons, the Insured Organization, and any Employee Benefit Plan.

**Insured Person** means any natural person who was, is now or becomes a trustee, member of the board of directors or governors, management committee member, general partner, officer, LLC Manager, in-house general counsel, member of an Employee Benefit Plan committee, or employee of the Insured Organization or of an Employee Benefit Plan, or, with respect to an Insured Organization incorporated outside of the United States of America, their functional equivalent, while acting in his or her capacity as a fiduciary of an Employee Benefit Plan or as a person performing Administration or ESOP Administration.

**Loss** [as amended by End. FRI-19090 and LIA-4029] means Defense Expenses and money which an Insured is legally obligated to pay as a result of a Claim, including settlements; judgments; back and front pay; compensatory damages; punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages; prejudgment interest; and legal fees and expenses awarded pursuant to a court order or judgment; and solely with respect to section I. INSURING AGREEMENTS B. of this Liability Coverage, Settlement Fees. Loss does not include:

A. Preston Moore, Jr.
April 1, 2019
Page 5

      1. civil or criminal fines (except Settlement Fees pursuant to Insuring Agreement B.; PPACA Civil Money Penalties; Section 502(c) Penalties; Section 507 Penalties; civil penalties under Sections 502(i) and 502(l) of ERISA or the privacy provisions of HIPAA; or, in the United Kingdom, civil penalties imposed by the Pensions Ombudsmen appointed by the Secretary of State for Social Services or by the Occupational Pensions Regulatory Authority, Pensions Regulator, or any successor body thereto, provided that the funds or assets of the pension scheme will not be used to fund, pay or reimburse the premium for this coverage or any portion thereof); sanctions; liquidated damages; payroll or other taxes (except Section 4975 Penalties); or damages or types of relief deemed uninsurable under applicable law; provided that Defense Expenses will be provided for items specifically excluded from Loss pursuant to section II. DEFINITIONS, M. Loss, 1., subject to the other terms, conditions, and exclusions of this Liability Policy

      2. payment of medical benefits, pension benefits, severance, or Employee Benefits which are or may become due, except to the extent that such sums are payable as a personal obligation of an Insured Person, because of such Insured Person's Wrongful Act; provided that this exclusion will not apply to:

            a. the Company's obligation to defend any Claim, if applicable, or to pay, advance or reimburse Defense Expenses, regarding a Claim seeking such benefits; or

            b. that portion of any damage, settlement or judgment covered as Loss under this Liability Coverage that represents a loss to any Employee Benefit Plan, or loss to any account of a participant in any Employee Benefit Plan, by reason of a change in value of any investments held by such Employee Benefit Plan or such account, including investments in the securities of the Insured Organization, notwithstanding that such portion of any such damage, settlement or judgment has been characterized by

      3. any amount allocated to non-covered loss pursuant to section III. CONDITIONS P. ALLOCATION of the Liability Coverage Terms and Conditions.

**Coverage Analysis**

It is necessary to reiterate that any coverage analysis is based on the allegations to date and the analysis may be amended should the allegations change – particularly if this turns into a civil action. The reason that I must stress this is that, in places, the Demand Letter is vague, incomplete and/or inaccurate. I will point out examples of this in the remaining analysis

A. Preston Moore, Jr.
April 1, 2019
Page 6

Although a civil action is threatened, it has not been brought. However, a written demand for monetary damages or non-monetary relief may constitute a Claim. At times, a letter like this may also be treated as a Notice of Potential Claim under the Policy. I will treat the Demand Letter as a Claim itself. The reason for my thinking is that treating this as a Claim benefits the Holding Company and the Bank (collectively "the Insured Organization") and any other Insureds, in that all Defense Expenses incurred after Travelers receives notice of a Claim are credited against the $75,000 retention in this case.

For there to be a Claim, there must be allegations of a Wrongful Act. The allegations of breach of duties imposed under ERISA fall within the definition of a Wrongful Act. The ESOP falls within the definition of Employee Benefit Plan in the Policy.

Since there are allegations against the Insured Organization, there is coverage for Defense Expenses incurred in defending the Insured Organization. The ESOP itself is an Insured so if there are any allegations against the ESOP (and it is not clear that there are) its Defense Expenses also constitute covered Loss. However, what is unclear from the Demand Letter is what individuals (described as either Trustees or Plan Fiduciaries) are alleged to have committed Wrongful Acts as none of their names are contained in the Demand Letter. The Insured Persons under the Policy are any officers, directors or employees of the Insured Organization who serve in the capacity of a fiduciary to the ESOP. At times, ESOPs have independent organizations which serve as an ESOP trustee (which be definition is therefore a "fiduciary"). To the extent that there is an organization or individuals serving as trustee who are not a director/officer/employee of the Insured Organization, they would not be Insured Persons under the Policy and not entitled to insurance coverage. However, there may be other individuals who are ESOP fiduciaries and would be entitled to coverage under the Policy. At this point, Travelers will assume that at least some of the unnamed individuals are Insured Persons under the Policy so all Defense Expenses currently being incurred will be applied against the retention, and paid as Loss once the retention is exceeded.

The definition of (covered) Loss does not include "payment of medical benefits, pension benefits, severance, or Employee Benefits which are or may become due, except to the extent that such sums are payable as a personal obligation of an Insured Person." It seems doubtful that any recovery would be considered excluded "benefits." That is because, in a situation like this where it is alleged that the ESOP itself has been harmed because it has paid too much to redeem overvalued stock, that is harm to the ESOP and not any denial of "benefits" to ESOP plan participants. The Demand Letter muddies the water in this respect, however, in that it is alleged that a class action to recover harm to the participants will be brought. Travelers must reserve its rights as to the characterization of the relief sought by the claimant, either now or in a subsequent action, to determine if the relief is covered Loss.

A. Preston Moore, Jr.
April 1, 2019
Page 7

To the extent that any relief sought is "disgorgement" there is no coverage for that as disgorgement is uninsurable under the law.

### Other Insurance

The FLIA also contains the following provision with respect to "Other Insurance":

> This Liability Coverage will apply only as excess insurance over and will not contribute with any other valid and collectible insurance available to the Insured, including any insurance under which there is a duty to defend, unless such insurance is written specifically excess of this Liability Coverage by reference in such other policy to the Policy Number of this Liability Policy. This Liability Coverage will not be subject to the terms of any other insurance.

Please advise if there are any other insurance policies or sources of indemnity that potentially may apply to the present Claim, other than policies which are excess to this Travelers Policy, and provide copies of any such policies or contracts, and correspondence concerning this Claim.

### Defense and Settlement Obligations and Costs

Endorsement LIA-FI-7505 indicates that this is a "Duty-to-Defend" policy with respect to a Claim under the FLIA. That endorsement goes on to indicate:

> If Duty-to-Defend coverage is provided with respect to any Liability Coverage(s) as indicated in ITEM 7 of the Declarations, the Company will have the right and duty to defend any Claim covered by such Liability Coverage, even if the allegations are groundless, false or fraudulent, including the right to select defense counsel with respect to such Claim; provided, that the Company will not be obligated to defend or to continue to defend any Claim after the applicable limit of liability has been exhausted by payment of Loss.

Given the Duty to Defend provision, Travelers will defend all claims made in the Demand Letter. We previously discussed the choice of counsel, and I indicated on March 11 that Travelers would retain the firm of Morgan Lewis and Bockius to defend this matter. I retained that firm that day and I understand that one or more attorneys in the firm has been in contact with you. Also, in recognition of the history that attorneys in the Troutman Sanders office in Richmond have had with the governance of the ESOP, I have agreed that while Morgan Lewis is taking the lead, that Troutman Sanders should be used in any capacity which makes the defense more economical, including serving as local counsel if a lawsuit is filed in Richmond. Again, please bear in mind that the first $75,000 incurred in Defense Expenses is the responsibility of the Bank.

A. Preston Moore, Jr.
April 1, 2019
Page 8

I will be updated on the status of matters by defense counsel. However, as I have also indicated, while Travelers is retaining counsel to defend our Insureds, counsel is representing you, our Insureds, (not Travelers) and you should feel free to consult with them any time you need to do so. While I am happy to respond to any insurance coverage issues, they are certainly more knowledgeable than I in the ERISA claims being asserted.

Please note that under the Policy, the Insureds are not free to make any settlement proposal without Travelers' knowledge and consent.

### **Reservation of Rights**

In addition to the Policy provisions discussed in this letter, other provisions may also apply, either now or in the event a lawsuit is filed. This letter does not constitute a waiver of any term or condition of the Policy or any rights or defenses under the Policy. Travelers respectfully reserves all its rights and defenses under the Policy and applicable law. The rights of the Insureds are likewise reserved.

Thank you for your attention to this matter.  Please do not hesitate to contact me if you have any questions or concerns.

Yours very truly,

*[signature: James T. Hynes]*

James T. Hynes, Esq.
Bond & Specialty Insurance -- Claim
385 Washington Street, SB02F
St. Paul, MN 55102
(651) 310-2682
(866) 608-9632 (fax)
jhynes@travelers.com

cc.     Bryan Hargett, Mason Insurance Agency
        Gregory Jabs, Travelers