

August 23, 2019

**E-MAIL ONLY**

Mr. A. Preston Moore, Jr.
Virginia Community Bankshares, Inc.
114 Industrial Drive, PO Box 888
Louisa, VA 23093

| | | |
|---|---|---|
| **Re:** | **Insured:** | **Virginia Community Bancshares, Inc.** |
| | **Insurer:** | **Travelers Casualty and Surety Company of America** |
| | **Policy:** | **Policy No. 106420159, eff. 9/30/18-9/30/19** |
| | **Matter:** | **Janice Moore class action** |
| | **Claim No.:** | **T1903241** |

*Previously reported:  February 19, 2019 Demand Letter*

Dear Mr. Moore:

This letter follows our conversation of last week and acknowledges receipt of the Complaint filed on August 12, 2019 in the U.S. District Court for the Western District of Virginia (Charlottesville Division) in the matter captioned:

> JANICE A. MOORE, ON BEHALF OF HERSELF AND A CLASS OF ALL SIMILARLY SITUATED PARTICIPANTS IN THE VIRGINIA COMMUNITY BANKSHARES, INC. EMPLOYEE STOCK OWNERSHIP PLAN v. VIRGINIA COMMUNITY BANKSHARES, INC., VIRGINIA COMMUNITY BANK, INC., A. PIERCE STONE, RONALD S. SPICER, JOHN A. HODGE, and H.B. SEDWICK, III, (Case No. 3:19-cv-00045).

This matter was forwarded to my attention for a response under the policy (the "Policy") issued to Virginia Community Bankshares, Inc. by Travelers Casualty and Surety Company of America ("Travelers").

In this letter I will describe, and in some instances paraphrase, the coverage afforded under the Policy.  My references to the Policy do not modify it in any way.  The Policy remains controlling regarding any determination or analysis of coverage.  Because the Policy is an indemnity policy, Travelers cannot definitively determine coverage until the claim is resolved.  Any coverage analysis in this letter is based on the allegations made and information known to date and is subject to change as the claim develops and/or further information is obtained.

This letter supplements and updates my prior letter of April 1, 2019.

A. Preston Moore, Jr.
August 23, 2019
Page 2

### The Claim

Please note that by referring to the allegations in the Complaint, I do not intend to lend them any credence. Nevertheless, the allegations set forth in the Complaint provide the context to determine what coverage may be available for this matter.

The Complaint is brought on behalf of a class described as follows:

> All persons who were participants in the Virginia Community Bankshares, Inc. Employee Stock Ownership Plan ("ESOP") between January 1, 2006 and December 31, 2018 (the "Class Period"), including any former participant who had not received a full distribution of his or her ESOP account as of January 1, 2006.

Janice Moore is alleged to be a retired employee of Virginia Community Bank ("VCB"), a wholly owned subsidiary of Virginia Community Bankshares, Inc. (the "Holding Company"), and was a participant in the ESOP.

The Defendants are:

- VCB
- The Holding Company
- A. Pierce Stone -- who was at all relevant times a trustee of the ESOP, a director and officer of the Holding Company, and a director and officer of VCB. Stone was a trustee of the ESOP until April 19, 2016.
- Ronald S. Spicer – who was at all relevant times a director and officer of the Holding Company, a director of VCB, and, until 2007 or 2008, an officer of VCB.
- John A. Hodge – who was at all relevant times a trustee of the ESOP and a director of the Holding Company. Hodge was a trustee of the ESOP until November 1, 2016.
- H.B. Sedwick, III – who was at all relevant times a trustee of the ESOP. Sedwick was a trustee of the ESOP until November 1, 2016.

The Complaint arises out of transactions in which Defendants allegedly knowingly and intentionally engaged in ESOP transactions of Holding Company stock (the "Stock") at prices that exceeded the fair market value of the Stock for their personal gain to the detriment of the Plan and its other participants, and additional breaches of Defendants' fiduciary duties to the Plan participants under ERISA.

The Complaint alleges that the Defendants: (a) fraudulently established an inflated value for the Stock to be used for ESOP transactions; (b) violated ERISA by causing the ESOP to repurchase Stock from the accounts of former ESOP participants at the inflated value; (c) leveraged the ESOP's assets to finance such repurchases with one or more non-exempt loans payable to VCB; and (d) saddled the ESOP participants with annual debt payment obligations

A. Preston Moore, Jr.
August 23, 2019
Page 3

and associated releases of high-priced shares of Stock in violation of ERISA for the remaining life of the ESOP until the final loan payment was made in 2016.

The Complaint contains causes of action for:
1. Breach of fiduciary duties under ERISA.
2. Engaging in prohibited transactions under ERISA.

Under each theory, it is alleged that losses to the ESOP approach or exceed $12 million. In addition to class certification, the Complaint seeks declaratory relief, an order that Defendants make good to a successor trust all ESOP losses and/or an Order that a constructive trust be placed on any profits earned by defendants, prejudgment interest, attorneys' fees and costs.

### The Policy

Travelers issued SelectOne for Community Banks Policy No. 106420159 ("Policy") to Virginia Community Bankshares, Inc., effective September 30, 2018 to September 30, 2019. The Policy is a claims-made policy and includes Liability Coverage Terms and Conditions (LIA-3001) as well as potentially separate insuring agreements which an Insured may select.

The only Insuring Agreement which is part of this Policy, and applicable to this Claim, is the Fiduciary Liability Insuring Agreement ("FLIA" - Form FRI-3001). Under the FLIA, there is a $2,000,000 limit of liability and a retention of $75,000 applicable to this matter. The FLIA provides:

> The Company will pay on behalf of the Insured, Loss for any Claim first made during the Policy Period, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, for a Wrongful Act.

The pertinent definitions and other provisions in the FLIA, and how those may affect coverage under the Policy are as follows:

**Claim** includes:

1. a written demand for monetary damages or non-monetary relief;
2. a civil proceeding commenced by service of a complaint or similar pleading;
…
against an Insured for a Wrongful Act.

**Wrongful Act** means**:**
1. any actual or alleged breach of fiduciary duty by or on behalf of the Insured with respect to any Employee Benefit Plan, including:

A. Preston Moore, Jr.
August 23, 2019
Page 4

>a. any actual or alleged breach of duties, obligations and responsibilities imposed by ERISA, COBRA, HIPAA, or by any similar or related federal, state, local, or foreign law or regulation, in the discharge of the Insured's duties with respect to an Employee Benefit Plan; or
>b. any other matter claimed against an Insured solely because of the Insured's status as a fiduciary of an Employee Benefit Plan; or

2. any actual or alleged negligent act, error or omission by or on behalf of the Insured in the Administration of Employee Benefits.

**Administration** means**:**
1. giving counsel, advice, or notice to employees of the Insured Organization, participants, or beneficiaries with respect to Employee Benefits;
2. interpreting Employee Benefits;
3. handling records in connection with Employee Benefits; or
4. effecting enrollment, termination or cancellation of employees of the Insured Organization, participants, or beneficiaries under an Employee Benefits program.

**Employee Benefit Plan** means**:**
1. any Welfare Plan which was, is now, or becomes sponsored solely by the Insured Organization exclusively for the benefit of employees of the Insured Organization;
2. any Pension Plan, including an Employee Stock Ownership Plan, which was, or is, sponsored solely by the Insured Organization exclusively for the benefit of employees of the Insured Organization and which existed on or before the Inception Date set forth in ITEM 2 of the Declarations;
3. any group or group-type insurance program, including a Health Savings Account (HSA) program, that meets the safe harbor conditions set forth in 29 C.F.R. 2510.3-1(j)(1), or any benefit plan that is not subject to Title I of ERISA, including any fringe benefit or excess benefit plan, that was, is now, or becomes sponsored solely by the Insured Organization exclusively for the benefit of employees of the Insured Organization; or
4. any Pension Plan for which coverage is provided pursuant to section V. CONDITIONS B. ACQUISITION OR FORMATION OF AN EMPLOYEE BENEFIT PLAN of this Liability Coverage.

**Insured** means the Insured Persons, the Insured Organization, and any Employee Benefit Plan.

**Insured Person** means any natural person who was, is now or becomes a trustee, member of the board of directors or governors, management committee member, general partner, officer, LLC Manager, in-house general counsel, member of an

A. Preston Moore, Jr.
August 23, 2019
Page 5

>Employee Benefit Plan committee, or employee of the Insured Organization or of an Employee Benefit Plan, or, with respect to an Insured Organization incorporated outside of the United States of America, their functional equivalent, while acting in his or her capacity as a fiduciary of an Employee Benefit Plan or as a person performing Administration or ESOP Administration.
>
>**Loss** [as amended by End. FRI-19090 and LIA-4029] means Defense Expenses and money which an Insured is legally obligated to pay as a result of a Claim, including settlements; judgments; back and front pay; compensatory damages; punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages; prejudgment interest; and legal fees and expenses awarded pursuant to a court order or judgment; and solely with respect to section I. INSURING AGREEMENTS B. of this Liability Coverage, Settlement Fees. Loss does not include:
>
>>1. civil or criminal fines (except Settlement Fees pursuant to Insuring Agreement B.; PPACA Civil Money Penalties; Section 502(c) Penalties; Section 507 Penalties; civil penalties under Sections 502(i) and 502(l) of ERISA or the privacy provisions of HIPAA; or, in the United Kingdom, civil penalties imposed by the Pensions Ombudsmen appointed by the Secretary of State for Social Services or by the Occupational Pensions Regulatory Authority, Pensions Regulator, or any successor body thereto, provided that the funds or assets of the pension scheme will not be used to fund, pay or reimburse the premium for this coverage or any portion thereof); sanctions; liquidated damages; payroll or other taxes (except Section 4975 Penalties); or damages or types of relief deemed uninsurable under applicable law; provided that Defense Expenses will be provided for items specifically excluded from Loss pursuant to section II. DEFINITIONS, M. Loss, 1., subject to the other terms, conditions, and exclusions of this Liability Policy
>>2. payment of medical benefits, pension benefits, severance, or Employee Benefits which are or may become due, except to the extent that such sums are payable as a personal obligation of an Insured Person, because of such Insured Person's Wrongful Act; provided that this exclusion will not apply to:
>>>a. the Company's obligation to defend any Claim, if applicable, or to pay, advance or reimburse Defense Expenses, regarding a Claim seeking such benefits; or

A. Preston Moore, Jr.
August 23, 2019
Page 6

>> b. that portion of any damage, settlement or judgment covered as Loss under this Liability Coverage that represents a loss to any Employee Benefit Plan, or loss to any account of a participant in any Employee Benefit Plan, by reason of a change in value of any investments held by such Employee Benefit Plan or such account, including investments in the securities of the Insured Organization, notwithstanding that such portion of any such damage, settlement or judgment has been characterized by

> 3. any amount allocated to non-covered loss pursuant to section III. CONDITIONS P. ALLOCATION of the Liability Coverage Terms and Conditions.

**Coverage Analysis**

This Complaint meets the definition of a Claim under the Policy. The prior Demand Letter of February 19, 2019 (for which I wrote an earlier letter dated April 1, 2019) was also a Claim. These are obviously "Related Claims" under the Policy and therefore will be treated as a single Claim with only one $75,000 retention being applied.

The Complaint alleges Wrongful Acts as defined in the Policy. The ESOP falls within the definition of Employee Benefit Plan in the Policy. VCB and the Holding Company are Insured Organizations under the Policy, and the individual Defendants named also appear to be Insured Persons, if they have held the positions described in the Complaint.

While the Policy definition of Loss broadly excludes "benefits", the damages which are alleged in the Complaint do not appear to constitute "benefits" and thus would not be excluded from coverage.

The Policy contains exclusions from coverage, including one which reads:

> EXCLUSIONS APPLICABLE TO LOSS, OTHER THAN DEFENSE EXPENSES
> 1. The Company will not be liable for Loss, other than Defense Expenses, for any Claim based upon or arising out of any Insured:
>> a. committing any intentionally dishonest or fraudulent act or omission;
>> b. committing any willful violation of any statute, rule, law; or
>> c. gaining any profit, remuneration or advantage to which such Insured was not legally entitled;
>
> provided that this exclusion will not apply unless a final adjudication establishes that such Insured committed such intentionally dishonest or fraudulent act or omission, willful violation of any statute, rule or law, or gained such profit, remuneration or advantage to which such Insured was not legally entitled.

A. Preston Moore, Jr.
August 23, 2019
Page 7

Travelers is not currently aware of any facts which would render this exclusion applicable, however, Travelers must reserve its rights under this exclusion or any other Policy provision which may serve as a limitation on coverage.

To the extent that any relief sought is "disgorgement" or that profits of individual defendants be placed in a constructive trust and remitted to the ESOP, there is no coverage for said amounts as that is uninsurable under the law.

### Other Insurance

The FLIA also contains the following provision with respect to "Other Insurance":

> This Liability Coverage will apply only as excess insurance over and will not contribute with any other valid and collectible insurance available to the Insured, including any insurance under which there is a duty to defend, unless such insurance is written specifically excess of this Liability Coverage by reference in such other policy to the Policy Number of this Liability Policy. This Liability Coverage will not be subject to the terms of any other insurance.

Please advise if there are any other insurance policies or sources of indemnity that potentially may apply to the present Claim, other than policies which are excess to this Travelers Policy, and provide copies of any such policies or contracts, and correspondence concerning this Claim.

### Defense and Settlement Obligations and Costs

Endorsement LIA-FI-7505 indicates that this is a "Duty-to-Defend" policy with respect to a Claim under the FLIA. That endorsement goes on to indicate:

> If Duty-to-Defend coverage is provided with respect to any Liability Coverage(s) as indicated in ITEM 7 of the Declarations, the Company will have the right and duty to defend any Claim covered by such Liability Coverage, even if the allegations are groundless, false or fraudulent, including the right to select defense counsel with respect to such Claim; provided, that the Company will not be obligated to defend or to continue to defend any Claim after the applicable limit of liability has been exhausted by payment of Loss.

Given the Duty to Defend provision, Travelers will defend all claims made in the Complaint. Lead defense counsel will be the attorneys at Morgan Lewis who have been involved to this point. Also, in recognition of the history that attorneys in the Troutman Sanders office in Richmond have had with the governance of the ESOP, I have agreed that while Morgan Lewis is taking the lead, that Troutman Sanders should be used in any capacity which makes the defense more economical, including serving as local counsel.

A. Preston Moore, Jr.
August 23, 2019
Page 8

Any decision on the use of Troutman Sanders is up to lead counsel. Again, please bear in mind that the first $75,000 incurred in Defense Expenses is the responsibility of VCB.

I will be updated on the status of this Claim by defense counsel.

Please note that under the Policy, the Insureds are not free to make any settlement proposal without Travelers' knowledge and consent.

### Reservation of Rights

In addition to the Policy provisions discussed in this letter, other provisions may also apply. This letter does not constitute a waiver of any term or condition of the Policy or any rights or defenses under the Policy.  Travelers respectfully reserves all its rights and defenses under the Policy and applicable law. The rights of the Insureds are likewise reserved.

Thank you for your attention to this matter.  Please do not hesitate to contact me if you have any questions or concerns.

Yours very truly,

*James T. Hynes*

James T. Hynes, Esq.
Bond & Specialty Insurance -- Claim
385 Washington Street, SB02F
St. Paul, MN 55102
(651) 310-2682
(866) 608-9632 (fax)
jhynes@travelers.com

cc.	Bryan Hargett, Mason Insurance Agency
	Gregory Jabs, Travelers